# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ALVIN RANKIN, JR.,

    *Petitioner*,

vs.

JACK PALMER, *et al.*,

    *Respondents*.

3:09-cv-00145-LRH-VPC

ORDER

This habeas matter under 28 U.S.C. § 2254 is before the Court for consideration of an exhaustion defense raised in the answer as to Grounds 1, 2 and 4. The exhaustion defense necessarily must be addressed prior to disposition of the merits on the remaining claims.

*Preliminary Discussion*

The May 12, 2011, scheduling order in this case provided:

> IT FURTHER IS ORDERED that any procedural defenses raised by respondents in this case shall be raised together in a single motion to dismiss. Procedural defenses omitted from such motion to dismiss will be subject to potential waiver. Respondents shall not file a response in this case that consolidates their procedural defenses, if any, with their response on the merits, except pursuant to 28 U.S.C. § 2254(b)(2) as to any unexhausted claims clearly lacking merit.

#33, at 1.

Thereafter, respondents filed a motion to dismiss contending that certain claims in the second amended petition did not relate back to the original petition. The motion proceeded on the premise that the original petition was timely but that both the first and second amended petitions were not. Under respondents' argument, claims in the second amended petition needed to relate all the way back to the

original petition through the first amended petition to be timely. The Court rejected this premise, holding that the first amended petition also was timely, such that claims in the second amended petition needed to relate back only to the also-timely first amended petition. The Court accordingly denied the motion to dismiss "without prejudice to a potential second motion to dismiss based upon the alleged failure of claims in the second amended petition (#27) to relate back to claims in the timely filed first amended petition (#16)."[1] The order contemplated that either such a motion to dismiss or instead an answer on the merits would be filed.

Respondents thereafter filed an answer. When the Court reached the matter for final disposition, it encountered the exhaustion defense raised together with the response on the merits.

The Court started using language similar to that in the May 12, 2011, order, in appropriate cases, after encountering too many instances where respondents were serially presenting defenses in multiple successive motions to dismiss. Respondents in essence were "chipping away" at cases with successive motions to dismiss presenting defenses in serial fashion that instead were readily identifiable from the outset of the case. The Court simply has neither the time nor the resources to address cases in such a piecemeal serial fashion where it otherwise is not necessary to do so in the given case. And Rule 4 of the Rules Governing Section 2254 Cases [the "Habeas Rules"] clearly gives the Court the authority to direct respondents "to file an answer, motion, or other response within a fixed time, or take such other action [as] the judge may order." *See also Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005)("*Unless a court has ordered otherwise*, separate motions to dismiss may be filed asserting different affirmative defenses.")(emphasis added). The Court of course, even without Habeas Rule 4, has inherent authority to manage its docket and enter appropriate scheduling orders "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. Pro. 1.

To be sure, there are cases where serial presentation of defenses is more appropriate and efficient. The Court thus often will direct that an apparent substantial, across-the-board defense -- such as a substantial potential time-bar defense applicable to the entire petition – be presented prior to the assertion of other defenses.

---

[1] #38, at 7.

-2-

This case is not such a case, however.

The current procedural posture of this case instead presents a prime example of why the Court's orders seek to preclude serial presentation of defenses in the more typical habeas case.

The Congressionally-mandated three-year reporting deadline under the Civil Justice Reform Act (CJRA) is impending in this case for March 31, 2012. If the exhaustion defense and the relation-back untimeliness defense had been "raised together in a single motion to dismiss" as previously ordered, the Court would have had at least the opportunity to rule on all potential defenses, give petitioner an opportunity to make his *Rose* choice[2] as to any unexhausted claims, and then have the case potentially poised for disposition on the merits in advance of the reporting deadline.

Instead, the Court proceeded to the answer on the assumption that it would be able to resolve the merits of the claims in advance of the reporting deadline only to find that the answer included an exhaustion defense. Now, following upon its holding herein that Grounds 1, 2 and 4 are not exhausted, the Court has no option, subject to the exception discussed below, other than to direct further proceedings regarding petitioner's *Rose* choice that likely necessarily will delay final disposition of the matter until after the reporting deadline. Under the governing law, subject to the exception discussed below, the Court simply cannot proceed forward while it is presented with a mixed petition including unexhausted claims.

The scheduling order does refer to presentation of an exhaustion defense with a response on the merits as to a claim "pursuant to 28 U.S.C. § 2254(b)(2) as to any unexhausted claims clearly lacking merit." However, as construed by the Ninth Circuit, a federal district court does not have unfettered discretion pursuant to § 2254(b)(2) to either address the exhaustion defense or instead simply rule on the merits. Instead, the district court can dismiss an unexhausted claim on the merits "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005). If the claim is not subject to this standard of near frivolity, the district court may not consider the merits of the claim if the petitioner has failed to exhaust state remedies, and the court instead must follow the *Rose* choice procedures. *Id.*

---

[2]*See Rose v. Lundy, infra.*

-3-

In this case, perhaps respondents' counsel misconstrued the scheduling order. Perhaps counsel misread the order as contemplating the presentation of the exhaustion defense together with the merits in the answer pursuant to § 2254(b)(2). And the Court acknowledges that counsel apparently was seeking to present the Court with all remaining issues in the case for disposition in advance of the March 31, 2012, reporting deadline.

The intent of the scheduling order, however, was that any exhaustion defense and any alternative response under § 2254(b)(2) as to patently meritless claims be presented in the *single, consolidated motion to dismiss*, together with any and all other procedural defenses. The Court will revise the language used in future similar scheduling orders to make this point emphatically clear.

The Court notes in this regard that much of the analysis of the defenses applicable in a federal habeas proceeding can be conducted readily at the outset of the case simply by referring to the state supreme court's decisions on direct appeal and collateral review. For example, if the state supreme court addressed the claim in the federal petition on the same operative facts and explicitly on the same federal constitutional basis, then the exhaustion inquiry is at an end as to that claim. Otherwise, further review of petitioner's filings before the state supreme court will be needed to determine whether the same operative facts and federal legal theory were presented together to the state supreme court. In this regard, the state supreme court's orders should be among the *first* items reviewed in framing potential defenses in a habeas case rather than among the *last* items reviewed while preparing the last among a succession of serial responses.

In the present case, the Court has no alternative other than to address the exhaustion defense despite any possible argument as to potential waiver. Certain defenses, such as procedural default, may be subject to waiver if omitted from a single motion to dismiss directed by a scheduling order. *Cf. Morrison, supra*. Under 28 U.S.C. § 2254(b)(3), however, "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement." Respondents have not done so here.

The Court accordingly proceeds to the exhaustion defense raised. The Court trusts that respondents' counsel will seek to avoid similar situations in the future where a readily discernible exhaustion defense is delayed until the answer in a procedurally typical case.

*Exhaustion*

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts. To satisfy this exhaustion requirement, the claim must have been fairly presented to the state courts completely through to the highest court available, in this case the Supreme Court of Nevada. *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003). In the state courts, the petitioner must refer to the specific federal constitutional guarantee and must also state the facts that entitle the petitioner to relief on the federal constitutional claim. *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000). That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *See,e.g., Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55, 115 L.Ed.2d 640 (1991).

Under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), a mixed petition presenting both exhausted and unexhausted claims must be dismissed without prejudice unless the petitioner dismisses the unexhausted claims or seeks other appropriate relief.

*Ground 1: Allegedly Suggestive Identification*

As backdrop, petitioner Alvin Rankin seeks to set aside his Nevada state conviction, pursuant to a jury verdict, of one count of conspiracy to commit robbery, one count of robbery with the use of a deadly weapon, and two counts of attempted robbery with the use of a deadly weapon as well as his adjudication and sentencing as a habitual offender.

In Ground 1, petitioner alleges that he was denied due process in violation of the Fifth, Sixth and Fourteenth Amendments when the identification testimony of Jesus Lera and Mario Sangines was admitted at trial despite allegedly unreasonably suggestive identification procedures.

Shortly after midnight on July 3, 2004, Victor Sangines, Jesus Lera and Mario Sangines were subjected to a robbery or attempted robbery by two black males in the parking spaces outside the Sangines' apartment, with at least one of the two robbers being armed with a handgun.

1   After the robbery, Jesus Lera and Mario Sangines were taken away for medical attention, but
2   Victor Sangines remained behind as the police searched the area. Shortly thereafter, the police
3   presented Victor Sangines with three different field showups of persons encountered during the search.
4   He identified Alvin Rankin during the second showup as the robber referred to in testimony as the
5   second of the two robbers. He excluded the other persons presented in the first and second showups.[3]

On July 26, 2004, approximately three weeks after the incident, a preliminary hearing was held. Victor Sangines and Jesus Lera separately identified Alvin Rankin in court as the second robber during their testimony. Each was cross-examined by defense counsel regarding their identification.[4]

Mario Sangines did not testify at the preliminary hearing.

Thereafter, at the April 2005 trial, Victor Sangines and Jesus Lera again separately identified Rankin in court as the second robber. Each again was cross-examined regarding their identification.[5]

At trial, Mario Sangines also separately identified Rankin in court as the second robber, and he was cross-examined regarding his identification. There was no testimony elicited from Mario Sangines either on direct or cross as to any prior identification. He responded "no" when asked whether he had been asked to identify suspects "from a group of photographs" at any other time.[6]

On direct appeal, petitioner presented, *inter alia*, the following factual assertions:

> . . . . Neither Jesus Lera nor Mario Sangines were asked to identify Rankin on the night of his arrest, as both of them were transported to the hosptital. . . . . They never saw the defendant in a lineup, or in a photo array. . . . . The first time that either was asked to identify Mr. Rankin as a perpetrator in this incident was on the date of the preliminary hearing. *In Mario's case, his first opportunity was at trial.*
>
> . . . . .
>
> At the preliminary hearing, the State introduced the in-court testimony of Victor Sangines and Jesus Lera, identifying the Defendant, Alvin Rankin, Jr. as one of the two assailants who robbed them on the

---

[3] #29, Ex. 28, at 23-27, 38-42, 78-83 & 98.

[4] #28, Ex. 10, at 17-18 & 21-36 (Victor Sangines); *id.*, at 42-49 (Jesus Lera).

[5] #29, Ex. 28, at 11-12, 36-40 & 50-86 (Victor Sangines); *id.*, at 125-36 (Jesus Lera).

[6] *Id.*, Ex. 28, at 90-91 & 101-14 (Mario Sangines).

-6-

> evening in question. At trial, they also called upon Mario Sangines, who also identified Alvin Rankin, Jr. as one of the assailants on the morning of July 3, 2004. On cross-examination at trial, both Jesus Lera and Mario Sangines indicated that they had never been taken to any form of line-up proceeding in which they were asked to pick the assailant from a group of other people prior to the trial. . . . . Both men indicated that they had never been shown any photo array from which they might have been asked to pick the Defendant from a group of other individual Defendants [sic]. . . . . *The only time that either man had been asked to identify Defendant Alvin Rankin was when they were asked to confront him in an in-court identification*. . . . . Neither of them had seen the defendant in a lineup or in a photo array between the time of the preliminary hearing and the time of the trial.

#29, Ex. 51, at 6 & 8 (emphasis added).

Based on these operative facts, Rankin argued that the introduction of the identification testimony of Jesus Lera and Mario Sangines denied him due process on the following grounds:

> In the present case, the in-court identification procedure used at the time of the preliminary hearing *(and, in the case of Mario Sangines, at trial)* clearly would produce a substantial risk of irreparable misidentification. Not only was the defendant the only black male present at Defense counsel's table at Mario Sangines' and Jesus Lera's *first* opportunity to confront and identify after the evening in question, but at *Mr. Lera's* first sighting he was also clad in the blue coveralls and handcuffs that all in-custody inmates wear to *preliminary hearing* proceedings, at least in Las Vegas, Nevada. To say that this presentation at preliminary hearing might create a danger of a mistaken impression that Alvin Rankin was the individual who had robbed any individual called upon to identify him is an understatement, at the very best. The same is true of the in-court identification procedure used *at trial*, in Mario Sangines' case.
>
> . . . . .
>
> The Court should remain mindful that the preliminary hearing took place roughly two weeks after the night of the crime. No doubt by this time the image of the two individual perpetrators had faded somewhat in the mind of Mr. Lera. *Mr. Sangines, on the other hand, was never called upon to identify any person as the possible perpetrator of this act until nearly two years had passed from the date of the crime.* . . . .

#29, Ex. 51, at 9-10 & 11 (emphasis added); see also #30, Ex. 57, at 5 & 7-9 (reply brief).[7]

---

[7] Petitioner further relied upon the factors in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), to argue that the identifications from the allegedly suggestive in-court identifications were not sufficiently reliable. As discussed, *infra*, the state supreme court held that in-court identifications were not subject to the *Neil v. Biggers* analysis in the first instance. See also #29, Ex. 33, at 93-94 (preliminary hearing setting not in evidence).

1  On direct appeal, the Supreme Court of Nevada rejected the claim presented to that court on the
2  following grounds:

> . . . Rankin contends that the district court erred by denying his motion to exclude the in-court identification testimony of State's witnesses, Jesus Lara and Mario Sangines. *Specifically, Rankin notes that neither witness was given an opportunity to identify him in a photographic or in-person line-up, and the courtroom setting identifications were highly suggestive because Rankin was the only African-American male in the room and seated next to Caucasian defense counsel.* Citing to Neil v. Biggers,[FN1] Rankin argues that the witness identifications were unreliable because the robbery was brief, occurred in a dark parking lot, and the witnesses's descriptions of the robbers were inconsistent. Also, Rankin notes that Sangines previously told police that he was uncertain whether he could identify the robbers and did not identify Rankin until trial, approximately two years after the commission of the crime. We conclude that Rankin's contention lacks merit.
>
> As a preliminary matter, we note that Biggers is inapposite because it only applies to identification testimony that has been tainted by an impermissibly suggestive, out-of-court pretrial identification.[FN2] *The analysis in Biggers does not extend to identifications occurring for the first time at trial because the presence of the judge and defense counsel and the availability of cross-examination provide adequate safeguards against suggestiveness.*[FN3] At trial, Rankin cross-examined both Lara and Sangines about any inconsistencies or weaknesses in their identifications, and the determination of the weight and credibility of their testimony was within the sole province of the jury.[FN4] Further, the record indicates that Lara and Sangines were unavailable for a show-up identification after the crime because both victims were receiving emergency medical treatment for their injuries sustained in the robbery. Finally, according to the prosecutor, defense counsel made no pretrial request for a physical or photographic line-up. Accordingly, we conclude that the district court did not abuse its discretion by refusing to exclude the testimony.

20 #30, Ex. 62, at 1-3 (emphasis added)(citation footnotes omitted).[8]

21  In the federal petition, as amended, petitioner alleges, in contrast to the operative facts presented
22 to the state supreme court on direct appeal, that Mario Sangines made an out-of-court identification of
23 Rankin at the time of the preliminary hearing:

> . . . . At some point during the [preliminary hearing] proceedings, a prosecutor requested that Mario Sangines "look inside the courtroom" to see if he could identify the perpetrator. (Ex. 17 at 20.)
> . . . .

---

[8] With regard to spelling, the transcript at the preliminary hearing has the witness spelling his name, through an interpreter, "L-e-r-a" whereas the trial transcript has him spelling his name "L-a-r-a."

> Mario allegedly identified Rankin when he saw him through the courtroom door sitting at counsel table. (Ex. 17 at 20.) . . . .
>
> . . . . .
>
> A hearing was held on September 21, 2004 on the issue of the expert witness. (Ex. 17.) During the hearing, counsel learned for the first time that Mario Sangines, who had not testified at the preliminary hearing, and who had not identified Rankin at the time of the incident, had identified Rankin while he sat at counsel table prior to the preliminary hearing. (Ex. 17 at 20.) According to the State, one of the prosecutors asked Mario to look inside the door to the courtroom to see if he could identify the perpetrator. (Id.) Not surprisingly, Mario allegedly identified Rankin, who was sitting alone at counsel table and who was the only young black man in the courtroom (see Ex. 22 at. 2), as one of the suspects. (Ex. 17 at 20-21.)

#27, at 8-10.

Petitioner alleges in principal part in Ground 1 that "the district court erred in overruling Rankin's objections to Mario and Jesus' identification of Rankin during trial."[9] However, petitioner also includes discussion regarding the identification testimony of Victor Sangines that arguably would tend to reflect that petitioner also is challenging the reliability of Victor Sangines' identification testimony, despite the fact that no claim was raised in the state courts challenging the admission of his identification testimony.[10]

In the answer, respondents contend that Ground 1 is not exhausted because petitioner has expanded the claim presented in the state courts challenging the admission of identification testimony by Jesus Lera and Mario Sangines to also challenge the reliability of Victor Sangines' identification testimony. In the reply, petitioner contends that Ground 1 challenges only the admission of the identification testimony of Jesus Lera and Mario Sangines. He maintains that "[a]ny discussion of Victor Sangines in this Ground was for the purpose of providing factual context only."[11]

////

---

[9] #27, at 12.

[10] See #27, at 9, lines 18-28.

[11] #40, at 4. The Court notes, however, that in the reply as to Ground 2, petitioner nonetheless maintains that Victor Sangines' "identification occurred as the result of an inherently suggestive one-on-one show-up." #40, at 10.

There perhaps is a fine line between referring to other identification testimony for context and instead in truth challenging the reliability of such identification testimony in a claim ostensibly directed to other identification testimony. The Court need not tarry over this particular potential basis for lack of exhaustion, however. Following a comparison of the claims presented in state court and in federal court, it is evident that Ground 1 fundamentally alters the claim presented to the state supreme court.

In order for a petitioner to fairly present and exhaust a claim, again, the petitioner must present *both* the operative facts *and* the legal theory upon which the federal court claim is based to the state courts. *Castillo, supra*. A petitioner thus may not fundamentally alter the legal claim already considered by the state courts. *E.g., Beaty v. Stewart*, 303 F.3d 975, 989–90 (9th Cir.2002). Accordingly, mere citation to the same constitutional protection in state and federal court is not sufficient if either the legal theory or the operative factual allegations urged in support of the claim are not the same. *See Picard v. Connor*, 404 U.S. 270, 277, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

In the present case, Ground 1 is based on materially different operative facts from the claim instead presented on direct appeal. On direct appeal, petitioner maintained that Mario Sangines identified Rankin for the first time in court at the April 2005 trial. On federal habeas review, petitioner instead maintains that Mario Sangines identified Rankin for the first time in an essentially out-of-court identification, *i.e.*, off the stand and not subject to cross-examination, occurring nearly two years earlier on the day of the July 26, 2004, preliminary hearing. On federal habeas review, petitioner apparently has combed through the state court record and found an unsworn hearsay representation by a prosecutor to the state district court at a September 21, 2004, hearing stating that Mario Sangines identified Rankin while he was sitting in the courtroom on the day of the preliminary hearing.[12] While this, unsworn and hearsay, statement is in the state court record, the salient point is that petitioner did not present these alleged operative facts to the Supreme Court of Nevada when arguing the claim on direct appeal.

---

[12] See #28, Ex. 17, at 20-21. The Court has no reason to doubt that the prosecutor was conveying sincerely what she believed to be true. The Court notes, however, that despite this representation being made in open court in September 2004, no testimony ever was elicited from an actual witness at the April 2005 trial as to any such out-of-court identification by Mario Sangines occurring on the day of the preliminary hearing. If the prosecutor was sincere, but nonetheless was in error, it would not be the first time in the annals of history that a lawyer made a sincere representation to a court that proved to be erroneous. The salient point, however, is the one made in the text, that, correct or incorrect, this markedly different factual scenario never was presented to the Supreme Court of Nevada on direct appeal.

Rather, petitioner instead urged to the Supreme Court of Nevada that "[i]In Mario's case, his first opportunity was at trial," that "[t]he only time that either [Lera or Mario Sangines] had been asked to identify Defendant Alvin Rankin was when they were asked to confront him in an in-court identification," and that "Mr. Sangines . . . was never called upon to identify any person as the possible perpetrator of this act until nearly two years had passed from the date of the crime." The Supreme Court of Nevada, hardly surprisingly, accordingly adjudicated the claim as to Mario Sangines on the factual basis that he first identified Rankin only at the April 2005 trial.

This different factual basis for the claim – introducing the element of a prior out-of-court identification – fundamentally alters the claim. In particular, this different operative factual basis fundamentally alters the substantive law applicable to the claim, with regard to the applicable clearly established federal law as determined by the United States Supreme Court. Clearly, if the Supreme Court of Nevada were presented with a factual presentation by the defendant on appeal involving an in-court identification that followed a prior out-of-court identification, such as petitioner now alleges, it would have been required to apply the reliability analysis of *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In this case, however, the Supreme Court of Nevada held that this reliability analysis was *not* applicable to the in-court identifications of Jesus Lera and Mario Sangines because their in-court identifications were presented by the defendant on appeal as not having been preceded by an out-of-court identification. Such a holding, indisputably, was neither contrary to nor an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court. The Ninth Circuit similarly held in *United States v. Domina*, 784 F.2d 1361 (9th Cir. 1986), following a comprehensive review of the case law, including *Neil* and *Manson*, that "[t]he Supreme Court has not extended its exclusionary rule to in-court identification procedures that are suggestive because of the trial setting." *See* 784 F.2d at 1367-69 (involving three different identification witnesses).[13]

---

[13] While Ninth Circuit citation rules perhaps preclude direct citation, the Court notes that the Ninth Circuit followed *Domina* on this point in two unpublished decisions in 2004 and 2006, further reflecting that the Nevada Supreme Court's similar holding in its November 13, 2006, order of affirmance was neither contrary to nor an objectively unreasonable application of Supreme Court precedent.

Put simply, *with* a prior out-of-court identification by Mario Sangines, the Supreme Court of Nevada was required to apply the reliability analysis of *Neil* and *Manson*. *Without* a prior out-of-court identification by the witness, it was not.[14]

That fundamental difference in the applicable Supreme Court precedent compels the conclusion that premising the claim on federal review instead on the assertion that Mario Sangines made a prior out-of-court identification fundamentally alters the claim that Rankin presented to the Supreme Court of Nevada. That claim instead was based upon the factual predicate that Mario Sangines identified Rankin for the first time at trial, nearly two years after the incident. Petitioner now essentially seeks to undercut the analysis of the state supreme court based on operative facts that are diametrically opposed to the factual assertions that instead were made to that court on direct appeal.[15]

Ground 1 – as fundamentally altered in federal court – therefore is not exhausted.[16]

***Ground 2: Limitation on Eyewitness Identification Expert Testimony***

In Ground 2, petitioner alleges that he was denied a right to a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments when the state trial court "abused its discretion" by limiting the scope of petitioner's eyewitness identification expert testimony at trial.

Respondent contends that Ground 2 is not exhausted because petitioner presented only a state law claim of evidentiary error on direct appeal.

Petitioner points to his assertion in his opening brief on direct appeal that the state district court abused its discretion by "unfairly limiting the testimony of defendant's eyewitness identification

---

[14] Petitioner urges that *Manson* applies the reliability analysis to in-court identifications as well as out-of-court identifications. *Manson* quite clearly applied the reliability analysis to in-court identifications *that followed an out-of-court identification*. This is abundantly evident from the discussion in both *Manson* and *Domina*. Petitioner's argument on this point is wholly without merit.

[15] The identification testimony of Jesus Lera essentially becomes immaterial to the analysis. *Domina* confirms that the state supreme court's holding that Lera's in-court identification was not subject to the reliablity analysis was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

[16] The federal district court's authority to entertain exhaustion issues *sua sponte* of course is well-established. *See, e.g., Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988). Moreover, exhaustion is not capable of waiver except through an express written waiver through counsel, 28 U.S.C. § 2254(b)(3), and respondents instead have challenged the exhaustion of Ground 1.

expert." Petitioner contends that the direct appeal claim "clearly presents the question whether the right to present his defense was improperly limited," "clearly states a constitutional claim," and "[t]here is simply no other way to read Rankin's claim than as one presenting the constitutional question whether his right to present a defense was violated."

The initial difficulty with petitioner's argument is that he did not allege a violation of "the right to present his defense" even in the counseled federal amended petition. After scouring Ground 2, the only reference to *any* constitutional right that the Court could find therein is the "right to a fair trial." Federal habeas pleading of course is not notice pleading, and federal constitutional claims must be pled with specificity in the petition. *See Mayle v. Felix*, 545 U.S. 644, 655-56, 125 S.Ct. 2562, 2569-70, 162 L.Ed.2d 582 (2005). It thus is highly doubtful that even the counseled federal amended petition can be read as stating a claim that petitioner's "right to present a defense" was violated. No such claim was pled in the federal pleading.

In all events, under established law, petitioner did not exhaust any federal claim – whether as to a "right to a fair trial" or a "right to present a defense" – in the claim of error raised on direct appeal. Mere general appeals to broad principles such as "a fair trial" do not exhaust any specific federal constitutional claim. *E.g., Castillo*, 399 F.3d at 999. *A fortiori*, alleging merely that the trial court acted "unfairly" indisputably exhausts no federal constitutional claim. Under established law, a petitioner must present *both* the operative facts *and* the federal legal theory relied upon in order to exhaust a federal claim in state court. *Id.* Petitioner may not – as he seeks to do here – merely allege the underlying facts in state court in support of a state law claim and then allege that a federal law claim was "clearly presented" because such a claim allegedly *could have been* presented on such facts. Established law clearly requires more. Petitioner presented no federal law claim in state court in this regard.

Ground 2 is not exhausted.

***Ground 4: Habitual Criminal Adjudication***

In Ground 4, petitioner alleges that he was denied due process under the Fifth, Eighth, and Fourteenth Amendments when the state district court allegedly "abused its discretion" in sentencing him as a habitual criminal.

1       Respondent contends that Ground 4 is not exhausted because petitioner presented only a state
2   law claim of error on direct appeal.
3       Petitioner does not point to any language in his direct appeal briefing asserting a federal
4   constitutional claim in this regard. He instead urges that state sentencing laws may create a liberty
5   interest protected by procedural due process guarantees. Be that as it perhaps may be, to exhaust a
6   federal constitutional claim, the habeas petitioner must *allege the federal claim in the state courts*.
7   Merely arguing a state law claim in the state courts and then arguing an alleged federal constitutional
8   claim in federal court does not establish exhaustion. Petitioner, again, must present the state courts with
9   *both* the operative facts *and* the federal legal theory upon which his claim is based. Petitioner clearly
10  did not do so here.
11      Ground 4 is not exhausted.[17]
12      IT THEREFORE IS ORDERED that the Court holds that Grounds 1, 2 and 4 (hereafter, the
13  "unexhausted claims") are not exhausted.
14      IT FURTHER IS ORDERED that petitioner shall have until **March 23, 2012**, to file a motion
15  for dismissal without prejudice of the entire petition, for partial dismissal only of the unexhausted
16  claims, and/or for other appropriate relief.
17      IT FURTHER IS ORDERED that any motion filed must contain or be accompanied by, either
18  contemporaneously or via a document filed by **March 29, 2012**, a signed declaration by petitioner under
19  penalty of perjury pursuant to 28 U.S.C. § 1746 that he has conferred with his counsel in this matter
20  regarding his options, that he has read the motion, and that he has authorized that the relief sought
21  therein be requested from the Court.
22      IT FURTHER IS ORDERED that respondents shall have until **5:00 p.m. on March 27, 2012**,
23  to file a response and petitioner shall have until **5:00 p.m. on   March 29, 2012**, to file a reply.

---

[17] The Court notes that counsel perhaps cut-and-pasted the subject heading for Ground 4 from another case. The heading to Ground 4 refers to petitioner being sentenced to a life sentence without parole and further refers to a violation of "Friedman's" due process rights. The petitioner in this case, Alvin Rankin, was sentenced to four life sentences *with* the possibility of parole after ten years, with only two of the four sentences running consecutively. Petitioner therefore is not incarcerated for life without parole but instead potentially may be eligible for parole outside the institution after a minimum twenty years is served, depending upon whether and when an institutional parole is granted.

Respondents should proceed in the briefing on the premise that the declaration referred to in the preceding paragraph will be timely filed. If it is not, the Court will address that matter *sua sponte*.

The entire petition, as amended, will be dismissed without prejudice for lack of complete exhaustion if a motion and/or declaration is not timely filed.

**No extension of the deadlines established herein will be granted except in the most compelling of circumstances.**

DATED this 15th day of March, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE